Samuel J. Silverman, J.
This is an action for breach of a contract by which defendants insurance companies by their agent defendant Clinton E. Frank, Inc. undertook to “ sponsor ” certain television programs entitled “ ABC Evening Report ” on plaintiff’s television network and to pay plaintiff an agreed price therefor. At the end of the program of November 9, 1962, plaintiff caused to be broadcast a “ promotional announce *941 ment ” of a program conducted by Howard K. Smith, a television news commentator, entitled “ The Political Obituary of Richard M. Nixon”, The Howard K. Smith program was broadcast on November 11,1962, and one of the participants in the program was Alger Hiss, who had been convicted of perjury in a cause célebre of our time. The appearance by Hiss on this program aroused considerable controversy. On November 14, 1962, defendants cancelled their sponsorship of the ABC Evening Report.
The first cause of action in the complaint is for the agreed unpaid price for the November 9 program. The second cause of action is for the breach with respect to programs after November 14.
Plaintiff has made motions under former rules 109 and 103 of the Rules of Civil Practice addressed to the answer, as well as a motion for summary judgment under former rule 113 of the Rules of Civil Practice. These motions are disposed of as follows:
The sponsorship contract of August 15, 1962 between the parties is a binding bilateral contract for sufficient consideration. Accordingly, the first, second and third defenses in the answer are insufficient.
The promotional announcement of the Howard K. Smith show at the end of the ABC Evening Report was not a breach of either any express or any implied provisions of the contract. It was not a ‘ ‘ commercial ” or a “ billboard ’ ’ within the meaning of paragraph 11, nor an advertisement of a product or service competitive to defendants. The contract was not one for a sale of time but rather for advertising through sponsorship of the program. Furthermore, paragraph 8 of the contract provides that “ one minute of program airtime must be lost before time charge credit will be issued.” The promotional announcement of the Howard K. Smith show was a matter of a few seconds. The parties are apparently in agreement that under the custom of the industry the sponsorship of a quarter-hour program by an advertiser does not preclude a promotional announcement of this kind at the end of the sponsored show, which is what happened here. Accordingly, the fourth and fifth defenses and the first and second counterclaims based on the promotional announcement must fail.
The sixth defense in the answer is that the contract is unenforcible because in violation of the Sherman Act (U. S. Code, tit. 15, § 1), and is part of a program of restraint of trade in violation of the Sherman Act. Among other things, the contract is attacked as an illegal tie-in sale whereby defendants were *942 required to sponsor the show on 35 stations they did not want in order to get the sponsorship on 95 stations that defendants did want.
As to the first cause of action for the recovery of the agreed consideration for the broadcast of November 9', 1962, on which defendants’ sponsorship was announced, and which took place before defendants’ repudiation of the contract, it seems clear that the defense of violation of the Sherman Act is insufficient. I think the case is indistinguishable from the goods sold and delivered cases, in which the United States Supreme Court has held a defense of violation of the Sherman Act insufficient (Kelly v. Kosuga, 358 U. S. 516 [1959]; Bruce’s Juices v. American Can Co., 330 U. S. 743 [1947]).
I hold the sixth defense also insufficient as to the second cause of action in the complaint, the action for breach of contract insofar as it relates to programs after November 9, and after the repudiation.
The latest test that the United States Supreme Court has stated is whether giving the judgment asked by plaintiff 11 would be to make the courts a party to the carrying out of one of the very restraints forbidden by the Sherman Act” (Kelly v. Kosuga, supra, p. 520). Unfortunately, this test is not unambiguous as applied to the facts of the present case. To grant plaintiff the judgment it asks with respect to the second cause of action would indeed require defendants to pay for broadcasts over some 35 stations which defendants say they do not want and which they say they were compelled to contract for as part of an illegal tying-in program by plaintiff. But in that respect, the situation seems not much different from Bruce’s Juices v. American Can Co. (330 U. S. 743, supra) in which recovery of agreed purchase price was allowed even though it included the claimed discriminatory overcharge. On its face the contract is a perfectly valid one for sponsorship of the program on 130 stations. Any network contract must have some provisions as to what stations the program is to be carried on. On its face this is not a contract having for its very object one of the restraints forbidden by the Sherman Act; it is not a contract to fix prices, or to divide territories between competitors, etc.
The United States Supreme Court has said: “ As a defense to an action based on contract, the plea of illegality based on violation of the Sherman Act has not met with much favor in this Court ” (Kelly v. Kosuga, 358 U. S. 316, 518, supra). To allow it would be to create ‘1 a very strange class of private attorneys general ” (ibid., p. 520).
*943 To allow the defense would involve that same quality of capriciousness that the Supreme Court found in Bruce’s Juices v. American Can Co. (supra, p. 753) as the penalty, would not be proportioned to the injury, but rather to other factors having nothing to do with the policies of the antitrust laws, e.g., whether credit was extended or not, and how much; how many stations defendants wanted, and how many stations defendants did not want; at what point in the life of contract defendants chose to assert its illegality; how much of the contract was performed and how much still remained to be performed etc.
Although a contract may so violate the antitrust laws as to be unenforcible in the State courts (General Aniline & Film Corp. v. Bayer Co., 305 N. Y. 479, 484-485 [1953]), to disallow the defense would be consistent with the policy that enforcement of the Federal antitrust laws should in general be in the Federal courts only (Mayer Bros. Poultry Farms v. Melteer, 274 App. Div. 169, 178 [1st Dept., 1948]). This consideration is particularly apropos where as here defendants are actually pressing a suit in the Federal court for relief under the antitrust laws. In that suit defendants, if entitled to it, can get full relief, bearing a rational relationship to the damage if any that they may have suffered. Incidentally, in that same suit defendants seek an injunction against the prosecution of the present suit. There is also an obvious advantage in not litigating these long drawn out and expensive antitrust questions in two courts. And while a decision by the Federal court can finally resolve the antitrust questions between the parties, the decision by the State court of these antitrust questions would probably not be binding on the Federal court (cf. Lyons v. Westinghouse Elec. Corp., 222 F. 2d 184,188 [O. A. 2d, 1955]).
The first partial defense in mitigation of damages is to the effect that plaintiff could have minimized its damages by negotiating other sponsorship and commercial announcement programs for the programs as to which defendants repudiated. This defense appears to be a valid one, but it goes, of course, only to the amount of damages.
If, as defendants allege in their second partial defense, the parties in substance agreed to a partial cancellation of the contract for the balance of November and all of December 1962, that agreement would seem to be supported by mutual consideration in that each party was relieved of its obligations for that period. And such an agreement, being executed, is not invalidated by section 33-c of the Personal Property Law (Velveray Corp. v. Jolo Plastics Corp., 19 A D 2d 69, 71 [1st Dept., 1963]). Accordingly, the second partial defense is sufficient on its face, *944 and the affidavits present a triable issue of fact as to whether the alleged agreement was in fact made. This issue of fact does not go only to the question of amount of damages, but substantially affects the issue of breach. Even if this breach relates only to part of the contract, it is inseparable from the rest of the contract in such sense that judgment could not be given on the portion of the second cause of action relating to the period after December, 1962 separately from the judgment for the period before. As to the second cause of action, it is not ‘ ‘ possible to divide the claims or cause of action so that an effective judgment can be rendered as to part, without mutilation of the whole ” (see Lowe v. Lowe, 265 N. Y. 197, 203 [1934]).
As defendant Clinton E. Frank, Inc. acted only as agent for a disclosed principal, it is not liable on the contract.
Accordingly, the first, second, third, fourth, fifth and sixth defenses are stricken as insufficient under former subdivision 6 of rule 109 of the Rules of Civil Practice and subdivision (b) of 3211 of the Civil Practice Law and Rules. The motion to strike the first and second partial defenses is denied. The first and second counterclaims are dismissed under former subdivision 5 of rule 109 of the Rules of Civil Practice and paragraph 7 of subdivision (a) of 3211 Civil Practice Law and Rules.
•Summary judgment is granted in favor of plaintiff against all defendants except defendant Clinton E. Frank, Inc., as to the first cause of action, and plaintiff’s motion for summary judgment is denied as to the second cause of action. Summary judgment is granted dismissing the complaint as to defendant Clinton E. Frank, Inc.
The motion to strike portions of the answer under former rule 103 of the Rules of Civil Practice is denied except that sub-paragraphs 8(a) through 8(f) and paragraph 87 of the answer are stricken.
Settle order on notice.
There appears to be no occasion for leave to amend. But if defendants desire to amend they may request leave on the settlement of the order, stating the proposed amendment, and setting forth evidence to show the defendants had good ground to support the proposed amendment as described in the last sentence of subdivision (e) of 3211 Civil Practice Law and Rules.